**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **CORY O. GLASS**<br><br>    **PLAINTIFF,**<br><br>**VS.**<br><br>**FREEDOM MORTGAGE CORPORATION,**<br><br>    **DEFENDANT.** | **Case No.:**<br><br>**JURY TRIAL REQUESTED** |

**COMPLAINT**

**COMES NOW** Cory O. Glass and, as his Complaint against Defendant Freedom Mortgage Corporation ("Freedom"), states as follows:

**JURISDICTION AND VENUE**

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 12 U.S.C. § 2614 and 12 U.S.C. § 1367.

Venue is proper here pursuant to 28 U.S.C. § 1391, because the events giving rise to Plaintiff's cause of action occurred in this District.

**PRELIMINARY STATEMENT**

This action arises from Freedom's wrongful management of Plaintiff's home mortgage loan. Specifically, Freedom, the current servicer of the loan, failed to make timely payments out of escrow necessary to renew Plaintiff's flood insurance policy. As a result, the prior flood policy was cancelled and coverage lapsed. Freedom could have reinstated the policy but again failed to make the payment before the deadline for reinstatement. The resulting lapse caused the cost of

insurance to skyrocket and the caused Plaintiff's monthly mortgage payments to substantially increase.

Freedom's failure to make the payment necessary to avoid lapse is a violation of the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601 *et seq*. ("RESPA"), specifically Section 2605(g) which requires that premium payments be made out of escrow in a timely manner to avoid a lapse in coverage.

Freedom also violated RESPA by not properly investigating and responding to Plaintiff's notices of servicing error. Plaintiff provided multiple written notices of servicing error to Freedom pursuant to the procedures set out Section RESPA 2605(e) and its implementing regulations. Freedom failed to conduct any reasonable investigation and failed to make corrections as required by RESPA.

Plaintiff asserts a claim against Freedom for violations of RESPA and breach of mortgage. Plaintiff seeks statutory and actual damages, including damages for mental anguish and emotional distress, plus attorneys' fees and costs.

## PARTIES

1. The Plaintiff is a natural person and resident of Mobile County, Alabama.

2. Defendant Freedom Mortgage Corporation d/b/a Freedom Mortgage Services ("Freedom") is a corporation formed under the laws of the State of New Jersey, with its principal place of business in New Jersey. Freedom was and is the owner of the subject mortgage loan and the "lender" designated in subject mortgage and note. Freedom was and is also the servicer of the subject loan. Freedom is also a "mortgage servicer" as defined by 12 U.S.C. § 2605(i)(2). At all relevant times, it acted as servicer with respect to Plaintiff's mortgage loan.

**FACTUAL ALLEGATIONS**

3.    Plaintiff is an adult resident of Mobile County, Alabama. He lives with his wife Haley and their children at 170 Esplanade Avenue in Mobile.

4.    Cory and Haley purchased their home on June 25, 2020, with a mortgage loan from Equity Prime Mortgage, LLC. The mortgage loan is $98,719.00, with an annual percentage rate is 3.750%, for a term of 30 years. The required monthly principal and interest payments are $457.18.

5.    The mortgage requires Freedom to apply each payment received to escrow, interest, and principal.

6.    The mortgage also requires the borrower to maintain homeowners' insurance on the property and requires that the insurance premiums and property taxes be paid through an escrow maintained by the lender.

7.    Freedom is required under the mortgage and federal law to make timely payments from the escrow account for payment of insurance premiums such that the payments are received when they become due. 12 U.S.C. § 2605(g).

8.    Plaintiff's home lies in a flood zone and he is required to maintain flood insurance on the Property.

9.    For the entire time the Glasses owned the home, flood coverage was provided by Neptune Residential Flood Insurance ("Neptune") and purchased through the Myrick Agency. The Neptune policy renewed every year on June 18th. The annual premium was $605.26.

10.    Funds necessary to pay the annual premiums for the flood policy, as well as the hazard insurance and taxes, were collected each month in the amount calculated by the mortgage company. Pursuant to the terms of the mortgage, those funds were held in an escrow account for

the purposes of payment of insurance and taxes.

11. On November 2, 2022, servicing of the loan was transferred to Defendant Freedom. Upon information and belief, ownership of the loan was also transferred to Freedom around the same time.

12. Prior to the transfer, Plaintiff paid all amounts required to pay insurance and taxes in the amounts calculated by the mortgage company without any apparent incident. However, as soon as Freedom began servicing the loan, Plaintiff received statements reflecting an inexplicable negative escrow balance. This required a large payment from the Plaintiff to cover the claimed escrow shortage, although the Plaintiff already paid the escrow amounts required by the previous servicer.

13. When the flood policy was due to be renewed in June 2023, Plaintiff was informed that Freedom had failed to pay the premium. After Plaintiff's intervention, Freedom paid the premium out of escrow and the policy was reinstated. In the process, Freedom obtained all the information it needed to pay subsequent renewal premiums.

14. Because of the issues with the 2023 premium, when the time for renewal in 2024 approached, Haley made calls to Freedom and the insurance agency well ahead of time to be sure Freedom had what it needed to pay the renewal premium. During a June three-way call with Freedom and a representative of Neptune (the flood insurance carrier), Haley provided the Freedom representative with all necessary policy information, though it had already used this same information to pay the 2023 premium. In any event, Haley was assured during that call that Freedom had everything it needed for the 2024 renewal and that the premium would be paid ahead of the due date. Based on these assurances, she and Cory assumed that the policy would be timely renewed through the escrow as required. That did not happen.

15. On July 29th Plaintiff received a notice from Neptune dated July 18th stating that the flood policy was cancelled due to non-payment. Haley immediately contacted Freedom and was told that they had not paid because they did not have the information needed to pay the renewal. This was false. In any event, the information was again provided, and Haley was assured that the renewal premium would be paid within the 30-day reinstatement period. That did not happen either.

16. Instead, Freedom waited until July 15th – just three days before the reinstatement deadline – to make the renewal payment, and it decided to send the payment by mail, though other faster means of payment were available. Predictably, Neptune did not receive the payment by the July 18th reinstatement deadline, and the policy was not reinstated.

17. Freedom's failure to pay the renewal premium and its failure to timely reinstate the policy led to a lapse in coverage which has, in turn, caused a drastic increase in the cost of coverage available to Plaintiff. Because of its own failure to timely pay the renewal, Freedom purchased a lender's placed policy for $1,010 and tacked that costs onto Plaintiff's monthly payments. Also, the forced-placed policy is not as comprehensive as the policy which Freedom allowed to lapse. Plaintiff has been told that replacing the lapsed coverage (which would have cost a little over $600) would now cost over $3,000 because of the lapse. The lapse caused the property to fall out of a program that had allowed Cory to pay the reduced premium.

18. On December 16, 2024, Mr. Glass sent a dispute letter to Freedom. The letter described in detail Freedom's failure to timely make the Neptune renewal premium and asked that the account be corrected. The letter also requested documents and information related to the servicing of the loan, including transaction or comment logs that reflected activity and communications regarding the loan since January 2024. A copy of that letter is attached as Exhibit

A.

19.	Freedom responded to the December 16th letter by letter dated February 13, 2025. In that letter, Freedom blamed its failure to pay the renewal on a lack of information needed to process the payment before the lapse date. It explained that it attempted but failed to get in touch with anyone at the insurance company prior to the lapse. Both statements are false. Freedom paid the 2023 renewal to the same company. Obviously, it had the information needed to do so again for the subsequent renewal. Moreover, it is not true that Freedom was not able to reach the insurance company prior to the lapse. As stated above, Haley Glass participated in a three-way call with both Freedom and Neptune prior to the renewal deadline and during that call was assured by Freedom that it had everything it needed to process the payment.

20.	Freedom refused to provide the requested documents, claiming that they are confidential and "protected from disclosure." It refused to provide the requested documents "unless court ordered."

21.	Freedom's response failed to acknowledge its error. In fact, it failed to state, one way or the other, whether an error occurred.

22.	Plaintiff sent another dispute letter to Freedom on April 14, 2025. That letter also addressed Freedom's failure to pay the renewal premium by the deadline, and it addressed the transactions outlined in Freedom's February 13th response. Specifically, Glass asked for an explanation of why Freedom failed to send the reinstatement payment until 3 days before the deadline and why it chose to mail the payment as opposed to a method which would guarantee timely receipt.

23.	Freedom responded to the April 13th letter by letter dated May 15th. Freedom again recounted the facts surrounding the 2024 renewal premium, acknowledging that it had received all

the information it needed to make the payment by at least July 12th (six days before the reinstatement deadline), but chose not to send a payment until July 15th and to send that payment by mailed paper check and not a faster method. But, once again, Freedom refused to acknowledge its mistake and failed to state, one way or the other, whether an error occurred. It refused to take any corrective action. To the contrary, Freedom acknowledged that it was charging Glass for forced placed flood insurance, a charge that was imposed solely due to Freedom's mistake.

24. The December 16, 2024 and April 14, 2025 letters each constitutes a Notice of Servicing Error ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35. The letters were each mailed to the address designated by Freedom for receipt of RESPA notices of servicing error and requests for information.

25. Freedom has engaged in a pattern and practice of acts and omissions which violate RESPA sufficiently to allow recovery of statutory damages under Section 2605(f)(1)(B). This pattern and practice include the failure to timely make payments out of escrow for insurance and a failure to conduct reasonable and adequate investigations of servicing errors described in NOEs. This pattern is reflected in multiple federal cases filed nationwide, as well as in multiple consumer complaints filed with the Consumer Finance Protection Bureau.

26. The harm suffered by the Plaintiff as a result of Defendant's wrongful acts and omissions bears a close relationship with the types of harm for which the law has traditionally allowed redress under common law claims for breach of mortgage, accounting, fraud, suppression, defamation, wrongful foreclosure, slander, invasion of privacy, wanton collections, negligence and willfulness.

## COUNT I
## (RESPA VIOLATIONS)

27. The allegations stated in Paragraphs 1 through 26 above are incorporated as if fully asserted herein.

28. This is a claim for Freedom's multiple violations of the Real Estate Settlement Procedures Act ("RESPA."), which imposes requirements and prohibitions upon mortgage servicers relating to the management of a home mortgage loan.

29. RESPA requires that a servicer make payments from any escrow established for payment of insurance premiums "in a timely manner as such payments become due." 12 U.S.C. § 2605(g).

30. RESPA and its implementing regulations grant borrowers the right to submit a "Notice of Servicing Error" ("NOE"), identifying perceived errors committed by the servicer and requesting information and documents relating to the servicing of their loan. 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

31. An NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

32. RESPA requires specific actions be taken by the servicer upon receipt of an NOE, including a reasonable investigation of the error. The servicer is also required to make all "appropriate corrections" to the account which a reasonable investigation would reveal. This would include the correction of all servicing errors, even those not described in the NOE. RESPA also requires the servicer to suspend all derogatory credit reporting while it investigates the errors set out in the NOE.

33. A servicer which fails to conduct a reasonable investigation and fails to "make appropriate corrections in the account of the borrower" after receipt of an NOE violates RESPA

Section 2605(e), without respect to any regulation promulgated under the statute. 12 U.S.C. § 2605(e)(2).

34. A servicer which fails "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties" violates Section 2605(k)(1)(C). This is a separate violation of RESPA, without respect to any regulation. 12 U.S.C. § 2605(k)(1)(C).

35. A servicer also violates RESPA when it fails to comply with regulations promulgated by the Bureau of Consumer Financial Protection, including the regulations concerning the servicer's duties upon receipt of an NOE. This is a separate RESPA violation. 12 U.S.C. § 2605(k)(1)(E).

36. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

37. Freedom is a "servicer" with respect to Plaintiff's loan as that term is defined in 12 U.S.C. § 2605(i)(2).

38. At all relevant times prior to the Neptune flood policy renewal date for the 2024 policy, Freedom had all the information needed to make the payment, had collected sufficient funds from Plaintiff in order to pay that premium, and was holding those funds in an escrow account established for the payment of insurance premiums.

39. Freedom failed to timely pay the additional premium required by Neptune and this failure caused the policy to lapse. This is a violation of RESPA, 12 U.S.C. § 2605(g) and its implementing regulations.

40. Plaintiff's December 16, 2024 and April 14, 2025 letters each constitutes an NOE within the meaning of 12 U.S.C. § 2605(e) and its implementing regulations. Freedom was

required to reasonably investigate the errors identified in the letter, make all appropriate corrections, and provide the information and documents requested. Freedom was also required to suspend any derogatory credit reporting for sixty (60) days after receipt of the NOE.

41. Any reasonable investigation of the errors identified in Plaintiff's NOE would have revealed that errors were made and that corrections were required. Specifically, Freedom knew or should have known that it had failed to timely pay the flood insurance premium and that this failure had caused the lapse and resultant increased costs. Moreover, it knew that the forced-placed insurance charges were solely cause by its own error and not by any failure on the borrowers' part. Freedom nevertheless failed to timely make any corrections and failed to conduct any reasonable investigation, and it failed to correct the errors identified in that letter and errors which would have been detected by any reasonable investigation.

42. Freedom also failed to provide the documents and information requested in the NOEs. This is also a violation of 12 U.S.C. § 2605(e) and its implementing regulations.

43. Freedom violated RESPA Section 2605(e) by failing to respond to Plaintiff's NOE as required by RESPA and its implementing regulations. Freedom also failed to conduct a reasonable investigation and failed to "make appropriate corrections in the account of the borrower" after receipt of Plaintiff's NOE. This is a violation of RESPA without respect to any regulation promulgated under the statute. 12 U.S.C. § 2605(e)(2). It is also a violation of RESPA as implemented by regulations promulgated by the CFPB.

44. Freedom also violated RESPA Section 2605(k)(1)(C) by failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." This is a separate violation of RESPA, without respect to any regulation. 12 U.S.C. §

2605(k)(1)(C). It is also a violation of RESPA as implemented by regulations promulgated by the CFPB.

45. Freedom violated RESPA Section 2605(k)(1)(E) by failing to comply with regulations promulgated by the Bureau of Consumer Financial Protection, including the regulations concerning their duties upon receipt of an NOE as specified in those regulations. This is a separate RESPA violation and failing to comply with the regulations is a violation of the statute itself. 12 U.S.C. § 2605(k)(1)(E). It is also a violation of RESPA as implemented by regulations promulgated by the CFPB.

46. Plaintiff has suffered actual damages as a proximate result of Freedom's RESPA violations, including mental anguish and emotional distress.

47. Freedom has engaged in a pattern and practice of acts and omissions which violate Section 2605(e), including its repeated violations with respect to Plaintiff, sufficient to allow recovery of statutory damages under Section 2605(f). This pattern and practice also include the failure to property respond to NOEs, failure to conduct reasonable and adequate investigations of servicing errors described in NOEs, and the failure to make corrections which any reasonable investigation would reveal are necessary and appropriate with respect to other borrowers.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Freedom for each violation of RESPA, awarding the following relief:

   a. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

   b. Reasonable attorney's fees, and costs expended in this proceeding; and

   c. Such other and further relief as the Court may deems just and proper.

## COUNT II
### (BREACH OF THE MORTGAGE)

48. The allegations stated in Paragraphs 1 through 26 above are incorporated as if fully asserted herein.

49. This is a claim against Freedom as lender under the mortgage and note.

50. Freedom, as lender, owes and, at all relevant times, owed contractual duties to Plaintiff as specified in the mortgage. Those duties include the duty to collect and hold funds in escrow for purposes of the payment of premiums for the required insurance coverage and property taxes. Freedom is also required under the mortgage to timely make payments out of escrow to pay the insurance premiums when due.

51. The duties owed by Freedom as lender are non-delegable, and Freedom at all relevant times owed those duties directly to Plaintiff.

52. In addition to the legal duties expressly stated in the mortgage, Freedom owed Plaintiff at all relevant times an implied duty to act in good faith in the administration of those duties.

53. Freedom breached the mortgage when it failed to timely pay the flood insurance premium and when it failed to take the necessary steps to reinstate the coverage after that failure.

54. The contractual duties owed by Freedom to Plaintiff under the mortgage, and as implied by law, are so coupled with matters of mental concern and/or solicitude that the breach of those duties resulted in substantial mental stress and worry. Freedom's breach resulted in a significant increase in the cost of insurance and mortgage payments, and this caused substantial worry that, due to the increased costs, Plaintiff would ultimately lose his family's home. Freedom's wrongful acts and omissions necessarily, foreseeably, and reasonably resulted in extreme stress, worry, anxiety, mental anguish, and suffering on the part of the Plaintiff.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Freedom for breach of the mortgage, and award compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS DEMANDED AS TO EVERY CLAIM ASSERTED HEREIN.**

**RESPECTFULLY** submitted on this the 29th day of August, 2025.

KENNETH J. RIEMER (RIEMK8712)
RIEMER LAW, LLC
*Attorney for Plaintiff*
2153 Airport Boulevard
Mobile, AL  36606
Telephone: (251) 432-9212
E-mail: KJR@Riemer-Law.com

**DEFENDANT IS TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESSES:**

Freedom Mortgage Corporation
c/o C T Corporation System – Registered Agent
2 North Jackson Street, Suite 605
Montgomery, AL 36104